IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC 2 3 2011

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| PAINTER FAMILY INVESTMENTS, LTD., L.L.P., and APC HOME HEALTH SERVICES, INC. | § § § § | |
| v. | § § | Case No. 1:10-CV-262 |
| UNDERWRITERS AT LLOYDS, SYNDICATE 4242 SUBSCRIBING TO POLICY NUMBER 42-7560009948-L-00 | § § § § | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Partial Summary Judgment as to Plaintiff

APC Home Health Service, Inc. ("Lloyds's Motion for Partial Summary Judgment"). This

motion seeks to dismiss all extra-contractual claims asserted by Plaintiff APC Home Health

Service, Inc. on statute of limitations grounds.[1]   APC Home Health Service, Inc. filed a response

to Lloyds's Motion for Partial Summary Judgment ("APC's Response"). The Court, after

reviewing Lloyds's Motion for Partial Summary Judgment, APC's Response, and the applicable

law, grants the motion for the reasons set forth below.

### I.  Factual Summary[2]

The claims in this dispute concern two insurance policies, one held by each of the named

plaintiffs:  Painter Family Investments, LTD, LLP ("PFI"), and APC Home Health Service, Inc.

---

[1] In a previous Memorandum Opinion and Order, the Court dismissed identical extra-contractual claims asserted by Plaintiff Painter Family Investments, LTD., L.L.P. on statute of limitations grounds, but deferred considering whether to also dismiss the extra-contractual claims asserted by APC Home Health Service, Inc. on the same grounds.

[2] This factual summary is partially adopted from the Court's previous Memorandum Opinion and Order.

("APC").[3]   Franklin R. Painter ("Painter") owns at least a majority interest in both Plaintiff

businesses.  The named defendant, Underwriters at Lloyds, Syndicate 4242 Subscribing to Policy

Number 42-7560009948-L-00 ("Lloyds"), is not a legal or natural person, but is in fact a

'syndicate' of persons or entities that underwrite some or all of the risk of both policies.[4]

Hurricane Dolly swept across South Texas on July 23, 2008.  The storm's wind and rain

damaged property in its path, allegedly including properties owned by APC and PFI in Harlingen,

Los Fresnos, and Raymondville.[5]   On July 30, 2008, both APC and PFI filed claims on their

respective policies, which were managed by Boulder Claims, LLC ("Boulder Claims") on behalf

of Lloyds.  A Claims Examiner responded to Plaintiffs' claims in two separate letters to Painter,

denying some claims and accepting others.  The letter concerning the PFI claims was dated

August 13, 2008, and was received by Painter on August 25, 2008.  The letter concerning the

APC claims was dated September 4, 2008, and was received by Painter on September 16, 2008.

On July 30, 2009, Painter sent a letter, on APC's behalf, to Insurance Claims Adjuster,

Inc. ("ICA"), another entity acting on behalf of Lloyds.  This letter requested release of

$4,100.64, an amount held back from the initial claim disbursement and referred to in Painter's

---

[3]These were policies Number 42-7560009948-L-00 and Number 42-7560013056-L-00, respectively.

[4]*See Indiana Gas Co. v. Home Ins. Co.*, 41 F.3d 314, 316-18 (7th Cir. 1998) (Easterbrook, J.) (providing an informative description of the Lloyd's of London insurance market and the legal significance of syndicates).

[5]The Fourth Amended Complaint lists the addresses of the properties allegedly damaged in the hurricane:  2730 S. 77 Sunshine Strip, Harlingen, TX; 1809 Bell Street, Harlingen, TX; 1805 Bell Street, Harlingen, TX; 200 W. Ocean Blvd., Los Fresnos, TX; 1810 Pease St., Harlingen, TX; 1806 Pease St., Harlingen, TX; 588 W. Harris Ave., Raymondville, TX; 2730 S. 77 Sunshine Strip Rear, Harlingen, TX; 1657 Sam Houston St., Harlingen, TX.

letter as "recoverable depreciation." Neither party informed the Court how ICA responded to this request, *i.e.*, whether the request was accepted or denied. However, APC contends that this request constituted a "claim for additional policy benefits." Lloyds did not address this contention, nor did it address the letter in which Painter requested the release of "recoverable depreciation."

On August 30, 2010, Painter filed a petition in state court on behalf of PFI ("Original Petition") regarding only the PFI policy. In addition to breach of contract claims, the Original Petition asserted several non-contract law claims, including: violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of the common law duty of good faith and fair dealing. An amended petition was also filed in state court on September 15, 2010 ("First Amended Petition"), which added to PFI's original claims, claims concerning the insurance policy owned by APC and properties covered by that policy. Despite PFI's inclusion of claims concerning the policy owned by APC, APC was not added as a named plaintiff until the Second Amended Complaint was filed on November 17, 2010, after Lloyds removed this case to this Court.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (quoting *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, at 322–25 (1986))). Once a movant makes

a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 321–25. The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 324. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court should not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party's burden "is not satisfied simply by creating some metaphysical doubt as to the material facts or by providing only conclusory allegations, unsubstantiated assertions or merely a scintilla of evidence." *Id.* (citations omitted). A court will resolve factual controversies in favor of the nonmoving party "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* Nonetheless, the court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456–58 (1992).

Lloyds asserts the affirmative defense of statute of limitations. *See Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011) ("[T]he statute of limitations is an affirmative defense that 'places the burden of proof on the party pleading it.") (citing *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 320 (5th Cir. 2004); *In re Hinsley*, 201 F.3d 638, 644–45 (5th Cir. 2000); FED.R.CIV.P. 8(c)). Where the motion for summary judgment is based on an

4

affirmative defense, "the movant must establish all the elements of the defense." *Citigroup Inc. v. Federal Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011). Therefore, granting summary judgment on a statute of limitations defense is appropriate only if there is no genuine dispute of material fact as to when the limitations period began or expired. *See Giordano v. Market America, Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

## III. Discussion

The ultimately dispositive issue in Lloyds's Motion for Partial Summary Judgment is whether the affirmative defense of statute of limitations bars recovery under APC's extra-contractual claims as a matter of law. The extra-contractual claims asserted by APC are: (1) violations of Section 542 of the Texas Insurance Code, (2) breach of the duty of good faith and fair dealing, and (3) violations of the Deceptive Trade Practices Act ("DTPA").[6] Lloyds moved to dismiss all extra-contractual claims asserted by APC, contending that these claims were untimely under the relevant limitations periods. The Court will begin its assessment of Lloyds's contentions by applying the same law and analysis that was applicable to PFI's extra-contractual claims in a previous order.

Since subject-matter jurisdiction in this case is based on diversity of citizenship, the Court must turn to state law in order to determine the limitations period applicable to each of Plaintiffs' extra-contractual claims. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989) (Wisdom, J.) ("In diversity cases, of course, federal courts apply state statutes of limitations and related state law governing tolling of the limitation period."). According to the Texas Business

---

[6]As stated above, APC also asserts breach of contract claims, but the Court defers its resolution of these claims.

and Commerce Code, claims under the DTPA must commence:

> [W]ithin two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

TEX. BUS. & COM. CODE § 17.56A. Likewise, the Texas Insurance Code and Civil Practice and Remedies Code each impose two year limitations periods on claims of unfair insurance practices and breach of the duty of good faith and fair dealing. *See* TEX. INS. CODE § 541.162; *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) ("[A plaintiff's] cause of action for breach of the duty of good faith and fair dealing must be brought within two years of the date on which the cause of action accrued.") (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a))). Therefore, all of APC's extra-contractual claims are subject to a two year limitations period.

Lloyds asserts that APC's extra-contractual claims are time-barred because they were commenced more than two years after APC's claims were denied, which, at the latest, occurred on September 16, 2008. This was the date Painter received the coverage-payment position letter addressing the APC policy from the Claims Examiner. The letter denied some claims and accepted others. Therefore, the limitations period allegedly expired two years later, on September 16, 2010. Although the insurance policy and properties relevant to APC's extra-contractual claims were referenced in the First Amended Petition, which was filed before the alleged limitations period expired, Lloyds contends that because APC was not added as a named plaintiff until November 17, 2010, APC's extra-contractual claims are over two months late.

APC filed a response to Lloyds's Motion for Partial Summary Judgment. In its response,

6

APC argues: (1) the "relation back" doctrine brings APC's claims within the applicable

limitations period; or, in the alternative, (2) dismissing APC's claims on summary judgment is

inappropriate because the issues presented involve mixed questions of law and fact.  The issues

raised by APC's response, of course, shape the Court's resolution of the ultimate issue at hand:

whether APC's claims were timely filed.  The Court will resolve these issues as they arise in the

course of demarcating the beginning and end of the limitations periods relevant to APC's

extra-contractual claims.

### A.      Commencement of the Limitations Period

#### 1.      Discovery Rule

APC at least impliedly concedes that these matters are subject to the two-year statute of

limitations.  Nevertheless, in its response, APC argues that this Court should not resolve the

statute of limitations issues in Lloyds's Motion for Partial Summary Judgment on summary

judgment because determining the accrual date of APC's claims-when the limitations period

began-involves mixed questions of fact and law.  According to APC, the "discovery rule"

governs the accrual date for the extra-contractual claims at bar, and the application of the

discovery rule involves questions of fact.  Therefore, APC argues, determining the accrual date

involves questions of fact, the resolution of which is "less appropriate" on summary judgment

than pure questions of law.  Lloyds did not address these issues in its motion, nor did it file a

reply in support of its Motion for Partial Summary Judgment.

When insurance benefits are the subject of any of the extra-contractual claims at bar, the

statute of limitations begins to run when the insurer denies the claim for those benefits.

*Citigroup Inc.*, 649 F.3d at 373 (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826,

7

828–29 (Tex. 1990)); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Murray*, 800 S.W.2d at 828). The Supreme Court of Texas chose this juncture in light of the long-standing rule that "[f]or the purposes of application of statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Murray*, 800 S.W.2d at 828 (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977)). The insurer's denial of benefits first causes harm to the insured, a condition necessary to vest the insured with standing to file suit under the extra-contractual claims at bar. *Id.* Once the insured receives notice of this denial, the limitations period begins. *Id.*

Determining the accrual date of a cause of action is generally a question of law. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194 (Tex. 2011) (citing *Provident Life & Acc. Ins. Co.*, 128 S.W.3d at 221; *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). Nevertheless, Texas courts have indicated that in some circumstances a claimant may raise the "discovery rule" to defer the accrual date of claims subject to a statute of limitations. *See, e.g., Shell Oil Co. v. Ross*, --- S.W.3d ----, 2011 WL 6277778, *5 (Tex. 2011). Application of the discovery rule would necessarily raise some questions of fact in certain instances, because it must then be determined when the injury inflicted on APC "could reasonably have been discovered." *BP America Production Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011) (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994))).

In *Davis v. Aetna Casualty and Surety Co.*, 843 S.W.2d 777, 777 (Tex.App.—Texarkana 1992, no writ), a state court of appeals clarified when the discovery rule must be applied in order

8

to determine the accrual date of the insured's claims.  In that case the parties did not dispute that the insured's suit was filed more than two years after the insurer's denial of the claim, but the insured argued that the discovery rule should be applied, tolling the accrual date of his claim.  *Id.* at 778.  The court affirmed the trial court's decision finding that the denial of coverage was not sufficiently ambiguous to merit a discovery rule analysis.  *Id.*  Narrowly circumscribing the discovery rule's use in the context of denied insurance claims, the court held, in part, that the "[a]pplication of the discovery rule is limited to those cases where there has been no outright denial of the plaintiff's claim."  *Id.*; see also *Murray*, 800 S.W.2d at 828 n.2 ("When . . . there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis.") (citation omitted).  If a court finds that there has been an "outright denial," then, the court is presented with questions of law in resolving the accrual date.

The Supreme Court of Texas later provided further guidance on sufficient content of a communication to constitute an "outright denial" of an insurance claim.  *Knott*, 128 S.W.3d at 221–22.  As interpreted by the Fifth Circuit, the "*Knott* rule" is that "in order for a letter to constitute a denial, the letter need not use the word 'denial,' but only state that there is not coverage for the claim and give reasons why coverage is being denied."  *Citigroup Inc.*, 649 F.3d at 374 (citing *Knott*, 128 S.W.3d at 221–22).  Although the court acknowledged that in some circumstances "the accrual date of a cause of action based on a violation of the Texas Insurance Code, the bad-faith breach of an insurance contract, or a violation of the DTPA involving insurance coverage, may present questions of fact to be determined on a case-by-case basis," the court found that the insurer's denial was sufficiently clear so that a determination of the accrual

9

date presented only questions of law. *Knott*, 128 S.W.3d at 222–23.

The clear denial of APC's claims in the Boulder Claims letter received by Painter on September 16, 2008 ("the September 16 letter") obviates application of the discovery rule. The somewhat repetitious letter stated, in part:

> As is discussed more fully below, we decline in part and accept in part the claim that you have submitted. Specifically, we regret to advise you that Syndicate 4242 must respectfully decline APC Home Health Services, Inc. Etal's [*sic*] request for coverage of the claim as submitted.
>
> * * *
>
> Our investigation has determined that the property at 2206 Treasure Hills Blvd., Harlingen, TX 78520 is not listed as a covered location on the declaration page of the policy. Therefore, Syndicate 4242 must respectfully decline your request for coverage of the claim as submitted.

The September 16 letter unequivocally states that there is not coverage and provides a terse, yet sufficient, reason for the denial. Under the *Knott* rule, the September 16 letter constituted a denial of an insurance claim as to some of the claims submitted on behalf of APC on July 30, 2008. The discovery rule does not apply to the accrual date of APC's claims. Therefore, the statute of limitations bars all claims not brought before September 16, 2010.

This finding comports with the jurisprudence of Texas, where the Supreme Court of Texas expressly reserved the use of the discovery rule to toll limitations periods for "exceptional cases." *Via Net. v. Tig Ins. Co.*, 211 S.W.3d 310 (Tex. 2006). Accordingly, in determining that September 16, 2008 was the accrual date relevant to APC's extra-contractual causes of action, this Court was not presented with questions of fact.

10

### 2.    Accrual Date v. Additional Claim

In its motion, Lloyds argues APC's claims accrued "on" or "at the latest" on September 16, 2008, when Painter received the coverage-payment position letter.  Since APC was not added as a named plaintiff within two years of this date, Lloyds alleges, APC's claims must be barred as untimely.  In its response, APC contends:

> [T]he limitations date ran when the claimant discovered or, in the exercise of reasonable diligence, should have discovered the facts giving rise to a cause of action. . . . [T]his date accrued when Plaintiff made an additional claim for policy benefits and was either rejected or accepted, i.e., when the Plaintiffs made a claim for the recoverable depreciation and was given notice that this was the last amount of monies Syndicate 4242 would pay on Plaintiff's claim.

In addition to implicitly urging the use of the discovery rule to determine the accrual date by incorporating language from statements of the rule,[7] this footnote contends that the date of the response to APC's July 30, 2009 request for recoverable depreciation should mark the accrual date of APC's claims.  APC does not state exactly when it was "given notice that this was the last amount of monies Defendant would pay"—the alleged date of accrual.  However, this omission is inconsequential: any date on or after the request for recoverable depreciation would indisputably place APC's claims within the limitations period because both parties agree that APC's extra-contractual causes of action commenced, at the latest, when APC was added as a named plaintiff on November 17, 2010.

APC is correct in asserting that, in some circumstances, additional claims for benefits

---

[7]*See, e.g.*, *BP America Production Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011) (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994))) (Under the . . . discovery rule, the cause of action does not accrue until the injury could reasonably have been discovered.").

delay the accrual date.  In Texas, "[t]imely claims for additional payments may begin the statute

of limitations running anew." *Pena v. State Farm Lloyds*, 980 S.W.2d 949, 954

(Tex.App.—Corpus Christi 1998, no pet.) (citing *Stevens v. State Farm Fire and Cas. Co.*, 929

S.W.2d 665 (Tex.App.—Texarkana 1996, writ denied)).  Consequently, whether APC's July 30,

2009 request renewed the limitations period requires a detailed analysis.  The reasoning of the

Texas courts that have considered this issue is sometimes difficult to follow, and neither party

has cited case law specifically addressing whether the unique factual context presented by a

request for "recoverable depreciation" may delay the accrual date.  Nevertheless, APC

characterizes the July 30, 2009 request as an "additional claim" that marked the accrual date of

its claims, and cites two Court of Appeals of Texas decisions to support this contention: *Stevens*

*v. State Farm Fire and Casualty Co.*, 929 S.W.2d 665 (Tex.App.—Texarkana 1996, writ

denied), and *Pena v. State Farm Lloyds*, 980 S.W.2d 949 (Tex.App.—Corpus Christi 1998, no

pet.).

     In *Stevens*, the insured sent a letter demanding certain reimbursements more than a year

after signing a "proof of loss" form that stated the amount of actual loss.[8]  *Stevens*, 929 S.W.2d

at 668.  Prior to sending the letter containing additional demands, but after signing the proof of

loss, the contractor repairing the covered property allegedly informed the insured of additional

costs required to repair the property.  *Id.* at 671.  Although the insurer argued that the cause of

action accrued no later than the date the insured signed the proof of loss, the court found that the

denial of the insured's later demand for reimbursement "started the limitation period running."

---

[8]A "proof of loss" is defined as: "[a]n insured's formal statement of loss required by an
insurance company before it will determine whether the policy covers the loss."  BLACK'S LAW
DICTIONARY 1251 (8th ed. 2004).

*Id.*

The Court of Appeals in Corpus Christi later interpreted *Stevens* to represent the "resett[ing]" of a limitations period in *Pena v. State Farm Lloyds*, 980 S.W.2d 949, 954 (Tex.App.—Corpus Christi 1998, no pet.). In *Pena*, the plaintiffs submitted, among many other claims, a claim for damages caused by movement of the slab foundation of a building. *Pena*, 980 S.W.2d at 951–52. This claim was denied. *Id.* Later, the plaintiffs submitted an additional claim to the insurer for damages caused by the same slab foundation movement. *Id.* In response, the insurer conducted a "reinvestigation of and partial payment for the same reported problems." *Id.* at 954. The insurer conceded that both claims "were essentially the same as they arose from the exact same source, the slab foundation movement, and concerned a continuing problem." *Id.* Based on these findings, the court decided that the second denial of payments "resetted" the limitations period. *Id.* at 954.

Although not cited by either party, two additional cases are instructive. In *Pace v. Travelers Lloyds of Texas Insurance Co.*, 162 S.W.3d 632 (Tex.App.—Houston [14th Dist.] 2005, no pet.), the Court of Appeals narrowed the scope of "claims for additional payments" that may delay the beginning of the limitations period. After the insurer denied the plaintiff's claim for damages, the plaintiff sent a letter containing an expert's report on the property referred to in the initial claim, to which the insurer responded by again denying the claim. *Id.* at 634. The court found that the second letter denying the claim did not restart the limitations period because, unlike the facts in *Pena*, there was "no evidence that [the insurer's original] decision was ever expressly or impliedly withdrawn or changed, such as by making payment or otherwise taking action inconsistent with that decision." *Id.*

13

In *Watson v. Allstate Texas Lloyd's*, 224 Fed.Appx. 335, 335 (5th Cir. 2007) (per curiam) (unpublished), an unpublished decision of the Fifth Circuit,[9] the plaintiffs submitted two claims for roof damage following Tropical Storm Allison. After their first claim was denied, the plaintiffs submitted an additional claim based on their alleged discovery of further roof damage. *Id.* at 337. In response, the insurer reopened the roof damage claim, but subsequently denied the claim again, due to its finding that the further roof damage was the result of the insured's failure to repair the original damage. *Id.* Comparing the facts to those in *Pena* and *Pace*, the Circuit found that the plaintiffs' assertion of an additional claim did not "re-start" the limitations period because the additional claim "simply reinstated their previously denied . . . claim, which [the insurer] again denied." *Id.* at 340.

This Court finds the preceding cases to be instructive and finds that the limitations period began to run when APC's initial claim was denied on September 16, 2008, prior to APC's request for recoverable depreciation. These decisions indicate that the submission of an additional insurance claim marks the beginning of the limitations period only if the insurer's response modifies or is inconsistent with its original denial. Although the parties did not divulge Lloyds's response, APC's letter did not request reconsideration of its claim or that Lloyds withdraw its original denial. In its letter, APC requested the release of a previously agreed-upon amount withheld from the original disbursement. The Court predicts that the Supreme Court of Texas would find that this request did not affect the accrual date of APC's extra-contractual claims. Lloyds's clear initial denial provided APC with facts that allowed it to pursue a judicial

---

[9]Unpublished decisions of the Fifth Circuit are not binding precedent, but may be persuasive. See generally 5th Cir. R. 47.5.4.

remedy, marking the accrual date of its causes of action. *See Murray*, 800 S.W.2d at 828 (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977)).

### B.   Commencement of APC's Causes of Action

Whether APC's claims against Lloyds were commenced within the limitations period turns on the significance of APC's delayed addition as a named plaintiff in this case.  The First Amended Petition, indisputably filed within the limitations period, claimed that the "Plaintiffs," which at the time included only PFI, owned "Policies Number 42-7560009948-L-00 and 42-7560013056-L-00"—the policy numbers referenced are both the PFI *and* APC policies.  Also mentioned are the properties corresponding to APC's insurance policy.  However, APC was not an initial plaintiff and was not added as a named plaintiff until the Second Amended Complaint was filed, which was outside of the limitations period if APC's claims were found, as this Court has done, *supra*, to have accrued when the coverage-payment position letter denying some of its claims was received.

Lloyds argues that APC's extra-contractual claims were not commenced until APC was added as a named plaintiff in the Second Amended Complaint.  Lloyds contends that this is the date on which "APC brought these extra-contractual causes of action against [Lloyds]."  Lloyds does not cite any authority for this conclusory proposition, or further explain its rationale, although the rationale does not need to be explained.  On the other hand, APC contends that its action against Lloyds commenced when the First Amended Petition was filed, because at that time Lloyds "knew the allegations, facts, and circumstances that founded the claim [eventually asserted by APC] against them."  The First Amended Petition allegedly gave Lloyds "fair notice," fulfilling the purpose of a limitations period.

To support its contention, APC relies on the "relation back" doctrine, which allows some untimely amended pleadings to be considered as timely as a preceding pleading. According to APC, its late addition as a named defendant is inconsequential, because "when a plaintiff misnames itself but sues the correct defendant, Courts relate back to the date of the original petition for the purpose of determining timeliness, . . . [and] then toll the statute of limitations so as to make the later addition of the correct plaintiff timely." To support this proposition, APC cites several state court decisions concerning misnamed plaintiffs; however, the Court should point out that APC did not misname itself. It was not named in any fashion.[10]

---

[10]The three most recent Texas cases cited by APC involved misnamed plaintiffs, not newly added plaintiffs. One such recent case was *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323 (Tex. 2009), where the plaintiff "Greater Houston Orthopaedic Specialists, LLP" misidentified itself in its motion for nonsuit as "Orthopaedic Specialists, LLP." *Id.* The defendants argued this nonsuit was ineffective because a non-existent entity filed for nonsuit, not the actual plaintiff. *Id.* The court held that the rationale for a typical "misnomer" case, where a plaintiff misnames a defendant, should apply, particularly because there was no actual risk that the plaintiff would think that an entity other than the plaintiff filed for nonsuit—the other entity did not exist. *Id.* Therefore, the Court reasoned, relation back was proper. *Id.* However, unlike the case at bar, the plaintiff did not *omit* the proper plaintiff—the plaintiff merely provided an incorrect name.

APC also cites *Pierson v. SMS Financial II, L.L.C.*, 959 S.W.2d 343 (Tex.App.—Texarkana 1998, no pet.), a decision of the Court of Appeals of Texas. In *Pierson*, the plaintiff "SMS Financial II," mistakenly identified itself as "SMS Financial I," and asked that the court apply relation back doctrine to preserve its claim from a limitations period. The court held that when the actual plaintiff misnames itself, the mistake is properly characterized as a "misnomer." *Id.* The court also found that even if it were a "misidentification"—where relation back is generally improper—applying the statute of limitations would not comport with the purpose of a limitations period. *Id.* The court explained: "the correct defendants were sued in the correct court, and they knew the allegations, facts, and circumstances that founded the claim against them." *Id.* at 347.

Finally, APC also looks to *Womack Machine Supply Co. of Houston v. Fannin Bank*, another decision of the Court of Appeals of Texas. *Womack Machine Supply Co. of Houston v. Fannin Bank*, 499 S.W.2d 917 (Tex.Civ.App.—Houston [14th Dist.] 1973), *rev'd on other grounds*, 504 S.W.2d 827 (Tex. 1974) (per curiam) (agreeing with lower court's disposition regarding the effect of Plaintiff's misnaming). In *Womack Machine*, the plaintiff "Womack Machine Supply Company of Houston" mistakenly identified itself as "Womack Machine Supply

Rule 15(c) is the basis of the relation back doctrine in federal courts.[11] FED.R.CIV.P. 15(c); *see Krupski v. Costa Crociere S.p.A.*, --- U.S. ----, 130 S.Ct. 2485, 2489, 177 L.Ed.2d 48 (2010).  Although this provision explicitly provides for relation back if "the amendment changes the party or the naming of the party *against whom a claim is asserted*"—*i.e.*, a defendant—it has been suggested that the relation back rule applies where a *plaintiff* was changed by an amended pleading.  *See* Advisory Committee Note to 15(c) ("[T]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.").  Particularly relevant to this case, in limited circumstances federal courts have permitted relation back even where the "change[]" effected by an amended pleading added a new plaintiff or plaintiffs.  *See, e.g., Williams v. United States*, 405 F.2d 234 (5th Cir. 1968); *Raynor Brothers v.*

---

Company" in the original petition.  Finding that this case was similar to one in which the plaintiff filed suit under a trade name and later changed to its true corporate name, the court held that the tolling of the statute of limitations related back to the original petition. *Id.* at 920.

[11]The text of Rule 15(c) states, in part:

(1) When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when:
    (A) the law that provides the applicable statute of limitations allows relation back;
    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
        (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
        (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*American Cyanimid Co.*, 695 F.2d 382, 384–85 (9th Cir. 1982); *In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, 839 (S.D.Tex. 2004); *In re Simon II Litigation*, 211 F.R.D. 86, 146 (E.D.N.Y. 2002) (Weinstein, J.); *Neufield v. Neufield*, 910 F.Supp. 977 (S.D.N.Y. 1996).

APC's reliance on a formulation of the relation back doctrine devised by Texas state courts is erroneous.[12]   Federal courts considering this issue have not uniformly identified the relation back law that should be applied in diversity cases.  *See* 6A Wright & Miller, Federal Practice and Procedure § 1503 (3d ed. 2011) ("There has been considerable uncertainty whether a federal court sitting in diversity jurisdiction is free to apply the relation-back principle embodied in Rule 15(c) instead of a conflicting state rule on the subject."); *see also Slaughter v. Southern Talc Co.*, 949 F.2d 167, 174 (5th Cir. 1991) ("There is some dispute as to whether an amendment not literally covered by Rule 15(c) should be governed by state or federal law in a diversity case.").  Notwithstanding this uncertainty, where an amendment sought to add new plaintiffs, courts in this Circuit have applied the federal law of relation back, rather than state law.  *See, e.g.*, *LeMasters v. K-Mart, Inc.*, 712 F.Supp. 518 (E.D.La. 1989) (applying federal law when a plaintiff was added); *Pappion v. Dow Chemical Co.*, 627 F.Supp. 1576 (W.D.La. 1986) (same).

What distinguishes those decisions applying the relation back doctrine from those disallowing it is sometimes a fine line which is difficult to discern.  Some common guiding principles emerge from a review of representative cases.  In *Williams v. United States*, 405 F.2d 234 (5th Cir. 1968), the Fifth Circuit addressed the unique considerations relevant to relation back of an amendment adding new plaintiffs.  In *Williams*, a mother brought suit against the

---

[12]The Court notes that, pursuant to the foregoing analysis, the result would be the same using Texas state law.

United States as next friend of her child, who was injured by an Army M-80 firecracker. *Id.* at
235. Several years after the lawsuit was filed, after the case was twice appealed, reversed, and
remanded, the mother sought leave to amend the complaint to add herself as a party plaintiff and
assert a new claim for loss of services. *Id.* at 235. The trial court refused to add her as a
plaintiff, reasoning that her claim was filed after the statute of limitations had run. *Id.* at 235–36.
On this issue, the Fifth Circuit again reversed the trial court's ruling, finding that the mother's
claim was timely because it related back to the original filing. *Id.* at 239.

The *Williams* court reasoned that although the relation back doctrine generally does not
apply "to an amendment that substitutes or adds a new party," courts often allow the amendment
"if the new and the former parties have such an identity of interest that permitting the new party
to enter would not be prejudicial." *Id.* at 237. The court, in a since often-cited statement, set out
a test courts may use to determine whether an opposing party had sufficient notice to negate any
prejudicial effect of adding a party:

> In determining whether the adversary has had fair notice, the usual emphasis of
> "conduct, transaction or occurrence" is on the operational facts which give rise to a
> claim by the particular party based on any one or all of the theories conjured up,
> whether timely or belatedly. *But when it comes to a late effort to introduce a new
> party, something else is added. Not only must the adversary have had notice about
> the operational facts, but it must have had fair notice that a legal claim existed in
> and was in effect being asserted by, the party belatedly brought in.*

*Id.* at 238 (emphasis added); *see also* 3 Moore's Federal Practice § 15.19 (Matthew Bender 3d
ed. 2010) ("The test for relation back . . . is more strenuous in the context of changed or new
parties to the action . . . ."). Turning to the mother's amendment, the court found that the
opposing party had sufficient notice to negate any prejudice because: (1) "the occurrence as an
operational set of facts was stated fully [in the complaint] (and subsequently proved)"; (2) "the

complaint, read with required liberality, . . . clearly revealed the existence of (a) a minor (b) the mother as parent and (c) the assertion by her of a claim"; (3) under local law, liability to the child would give rise to liability to the parent; and (4) the circumstances "reasonably indicate[d] a likelihood that the parent would incur losses of a recoverable kind . . . ." *Id.* at 239. It emphasized that the mother was essentially already involved in the suit as she brought the child's case as next friend.

Although the court restated the common observation that relation back is "liberally applied" under Rule 15(c), the progeny of *Williams* in this jurisdiction narrowly interpreted the range of circumstances under which the addition of a plaintiff may relate back. *Id.* at 236. A district court in Louisiana discussed *Williams* in the context of adding a new plaintiff almost twenty years later in *Pappion v. Dow Chemical Co.*, 627 F.Supp. 1576 (W.D.La. 1986). In *Pappion*, a man diagnosed with lung cancer and his wife filed suit against Dow Chemical for allegedly negligently manufacturing and/or distributing the chemicals that caused his injuries. *Id.* at 1578. After the suit commenced, the man died. *Id.* More than two years after he died, the man's wife sought to add her ten children as party plaintiffs to the original action, each asserting a survival action and a wrongful death action. *Id.* Although these claims were asserted beyond the limitations period, the plaintiffs argued that the claims related back to either of two timely filed petitions. *Id.* at 1579. Rejecting this contention, the court held that the amendment did not relate back to a timely filed petition under Rule 15(c).

The *Pappion* court distinguished *Williams* by finding that the opposing party had no sufficient notice of the additional plaintiffs because there was no prior mention of the children. *Id.* at 1581. Even if the opposing party had actual knowledge of the children, the court reasoned

20

that there was no reason that the defendants should "know that they were even remotely a part of this action." *Id.* After comparing a prior decision of the District of Columbia Circuit denying the application of relation back to an amendment adding a new plaintiff, the *Pappion* court concluded:

> Rule 15(c) will not allow a plaintiff to amend his or her complaint to add another prospective plaintiff, whose claim arises out of the same transaction or occurrence of the original pleading and whose claim would otherwise be time-barred, merely because the defendant had prior notice of the additional plaintiff's existence. Rather, the additional plaintiff must have in some manner already been involved in the action, so that the defendant was on notice that it was in effect already defending the action against the new plaintiff who seeks to be added by the late amendment.

*Id.* The court reasoned that this ruling was consistent with the policy behind statutes of limitations, which would otherwise "be circumvented if a plaintiff is allowed to amend his complaint and add a new plaintiff merely because the new plaintiff's claim arose from the same transaction or occurrence of the original claim and the defendant was aware that the new plaintiff existed." *Id.* at 1581–82.

A few years later, the Eastern District of Louisiana revisited the same issue in *LeMasters v. K-Mart, Inc.*, 712 F.Supp. 518 (E.D.La. 1989). In *LeMasters*, the plaintiff sued K-Mart after allegedly slipping and falling in its store. *Id.* at 519. The plaintiff then sought to add his wife as a party plaintiff outside of the limitations period, asserting additional claims for loss of society, comfort, and consortium. *Id.* The plaintiff asserted that his wife's claims were timely, relying on the relation back doctrine in Rule 15(c). *Id.* After the court reviewed the decision in *Williams*, as well as the prior decision in *Pappion*, the court again found that the proposed amendment did not relate back to the date of the timely filed petition. *Id.* at 520. Consistent with *Pappion*, the court reasoned that the opposing party's actual awareness of the wife's existence was of no moment

21

because there was no evidence that K-Mart "knew or should have known of the existence of her *cause of action.*" *Id.* The court also gave weight to the wife's failure to provide any reason for failing to assert her claim within the limitations period. *Id.* Finally, the court implicitly found that, unlike many of the cases that applied relation back to an additional plaintiff, the wife's claims were not "similar or identical to the plaintiffs already in the lawsuit." *Id.*

Seemingly, the latest reported opinion in this jurisdiction to interpret *Williams* was the Fifth Circuit's decision in *Slaughter v. Southern Talc Co.*, 949 F.2d 167 (5th Cir. 1991). In *Slaughter*, employees and former employees of a defendant corporation filed suit against producers and users of asbestos-containing products, alleging that these products caused pulmonary disease. *Id.* at 169. After suit was filed, two of the plaintiffs died. *Id.* The dead plaintiffs' wives subsequently moved to substitute themselves as additional plaintiffs, asserting wrongful death claims after the statute of limitations had run. *Id.* at 173–74. The Fifth Circuit decided that the wives' claims related back to the original pleadings under Rule 15(c). *Id.* at 175.

The *Slaughter* court reasoned that relation back was proper under the *Williams* court's reasoning. First, like *Williams*, there was no dispute that the additional claims arose out of the same transaction or occurrence as the original pleading. *Id.* Second, it seemed clear that the opposing party again had adequate notice because the wives in *Slaughter* were already parties to the original lawsuit. *Id.* The amendment merely "sought to recover for the injury originally alleged not only as representatives of their husbands' estates, but also as individuals injured in their own right." *Id.* The court reasoned that "[w]hen plaintiffs filed suit, death loomed large, all knew that plaintiffs could proceed under [the relevant wrongful death statute.]" *Id.*

This case is a closer call than any of those cited. On the one hand, the property and policy

were both mentioned in a petition that was timely filed.  On the other hand, APC was never a

party prior to the Second Amended Complaint, and this is certainly not a misnomer situation.  In

contrast with *Williams* and *Slaughter*, the amendment here does not relate back to the original

pleading.  As a threshold matter, the amendment did not arise out of the same "conduct,

transaction, or occurrence" set out in the original pleadings.  In all of the above cases, this

necessary condition was indisputably satisfied.  This Court cannot find, however, that APC's

claims against Lloyds arose out of the same conduct or occurrence as those asserted by PFI.  As

previously explained, the conduct or occurrence that gave rise to PFI's claims was Syndicate's

partial denial of PFI's claims in the coverage-payment position letter received on August 25,

2008.  The coverage-payment position letter that gave rise to APC's claims was not received

until September 16, 2008.  Each letter addressed claims relevant to two separate insurance

policies, owned by two separate corporate entities, covering completely different properties.

 Even if this Court were to find that APC's claim arose out of the same conduct or

occurrence, Lloyds did not receive adequate notice of APC's claim.[13]  Following the reasoning

in *Pappion* and *LeMasters*, even if Lloyds was actually aware of Painter's ownership interest in

both APC and PFI, it was not necessarily aware of APC's cause of action.  Although PFI

included a reference to the insurance policy owned by APC and the properties corresponding to

that insurance policy within the statutes of limitations that applied to APC's claims, that

inclusion was not sufficient to put Lloyds on notice of a claim by APC.  One plaintiff without

standing to assert another plaintiff's claims cannot attempt to do so and thereby toll the statute of

---

[13]One might argue that the hurricane was the triggering "occurrence."  Even so, the result
would still be the same.  The claims are not similar.  The properties impacted are different, the
important dates are different, and the denials by Lloyds occurred at different times.

limitations on the latter's claims.  Joining the party as a plaintiff is not a mere formality, but serves to put the other party on notice of the claims asserted against it.  The federal rules provide courts with discretion to add new parties, but do not treat such additions as the simple correction of a clerical error.  This is not a case of mistaken spelling or corporate form—it is an entirely new party.

Likewise, barring a corporation's claims because it was not timely joined as a party by its stockholder, even though its owner asserted those claims on behalf of another company in the same lawsuit, may seem like perplexing reasoning; but such is the effect of corporate formalities.  It is true that a purpose of the relation back doctrine is to avoid treating pleadings as a game of skill.  *See Conley v. Gibson*, 335 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *see also Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002) ("[Rule 15(c)] allows some claims that otherwise might be dismissed on the basis of procedural technicalities to prosper while at the same time keeping the door closed to other claims that have been allowed to wither on the vine.").  However, if a business owner accepts the entity status of a corporation in exchange for limited liability benefits, it would be unfair to allow him to divest that business of personhood when it is convenient for amendment purposes.  Here, APC is a separate legal entity, owning separate properties, with separate claims from those rightfully asserted by PFI.  The Court declines to apply the relation back doctrine to save APC's untimely claims.

It also needs to be stressed that the first Petition or Complaint which sets out any claim by APC is the Second Amended Complaint filed on November 17, 2010.  This Complaint was filed

24

without leave of court, and to date no leave has been sought.  Thus, to say APC was first included as a party two months after any limitations bar would have occurred is to be charitable.  Technically, it is not a party yet because this Court has not been asked for nor has it given permission for the Second Amended Complaint or any of its successors to even be filed.  Those filings without leave of court are ineffectual.  *See* FED.R.CIV.P. 15(a).[14]

## IV. CONCLUSION

The Court holds, for the aforementioned reasons, that APC's extra-contractual claims are barred by the two year statutes of limitations.  APC's claim accrued when it received the coverage-payment position letter on September 16, 2008, and, at best, it did not commence before it was joined as a named plaintiff more than two years later on November 17, 2010.  Therefore, Lloyds's Motion for Partial Summary Judgment [Doc. No. 13] is **GRANTED**.

---

[14]This provision reads:

(a) Amendments Before Trial.
> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>> (A) 21 days after serving it, or
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
> (3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

25

Signed this 23rd day of December, 2011.

Andrew S. Hanen
United States District Judge